**Frank WOERTMAN, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**No. 89SC492.**

Supreme Court of Colorado, En Banc.

Jan. 14, 1991.

Rehearing Denied Feb. 4, 1991.

Gregory J. Fasing, P.C., Gregory J. Fasing, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., and Wendy J. Ritz, Asst. Atty. Gen., for respondent.

Justice ERICKSON delivered the Opinion of the Court.

Frank Woertman was charged with three counts of sexual assault on a child. Section 18–3–405, 8B C.R.S. (1986). The jury returned a verdict of guilty on Count I, and verdicts of not guilty on Counts II and III. Woertman was sentenced to six-years imprisonment.[1] The court of appeals affirmed. *People v. Woertman*, 786 P.2d 443 (Colo.App.1989). We granted certiorari, and now reverse and remand for a new trial.

I

Woertman was a surrogate older brother to R.T., a minor, at the time the alleged sexual contact occurred. In August 1985, R.T. told his adoptive mother that Woertman had fondled him and committed a number of sex acts. R.T.'s mother reported the incidents to R.T.'s therapist, who referred her to the Kempe Child Crisis Center. R.T. related his account of sexual abuse to Dr. Hendrika Cantwell at the crisis center, and later to Denver Police Detective James Malone. Woertman was subsequently charged with sexual assault on a child.

Prior to trial, Woertman sought and was granted a bill of particulars. The trial court, however, did not require the prosecution to elect specific dates for the acts charged, but instead ordered that "the prosecution [ ] set forth the times as best they are able to." The prosecution produced a bill of particulars that stated:

Regarding Count I of the information, the People would show that sometime in the winter of 1984 and before Christmas (November 1, 1984–December 25, 1984) [R.T.] spent the night at [Woertman's] house. The two of them took a shower together and [Woertman] touched him all over his body to see if he was dry. Then they went to the bedroom where white stuff came out of [Woertman's] penis. [Woertman] wiped it on [R.T.'s] face and body. [Woertman] also put his finger in [R.T.'s] butt.[2]

At trial, R.T., C.B., R.T.'s mother, Dr. Cantwell, and Detective Malone all testified regarding sexual acts that Woertman had committed against R.T. and C.B. In

---

1. Count I alleged sexual contact with a nine-year-old boy, R.T., between November 1, 1984, and December 25, 1984. Count II alleged sexual contact with the same boy between May 17, 1985, and June 15, 1985. Count III charged Woertman with sexual contact with another nine-year-old boy, C.B., between April 1, 1985, and September 1, 1985.

2. The bill of particulars regarding Counts II and III stated:

   In Count II, the People would rely on an incident which occurred sometime between May 17 and June 15, 1985 at [Woertman's] house on King Street in which [R.T.], [Woert-

   man], and [C.B.] were all there. [Woertman] allegedly pulled on their penis' and pinched [R.T.'s] penis.

   In Count III, the People would rely on an incident that occurred between April 1, 1985 and April 30, 1985, prior to [Woertman] having actual custody of [C.B.]. [Woertman] took [C.B.] to Skate City where [C.B.] fell a couple of times. When they went back to [Woertman's] house, [Woertman] examined [C.B.'s] penis telling him something to the effect that he knew it was embarrassing but he didn't want [C.B.] going home with any bruises.

total, the testimony covered over fifty acts of alleged sexual abuse that were reported by R.T. and C.B. Although the bill of particulars only set forth three acts upon which the prosecution was relying for conviction, the trial court allowed evidence of other sex acts to be introduced as similar transactions over the objection of Woertman.[3] The court, however, did not instruct the jury at the time the evidence was offered that the evidence was admitted for the limited purpose of clarifying and explaining the context in which the abuse took place. *See Stull v. People,* 140 Colo. 278, 286, 344 P.2d 455, 459 (1959).[4] The jury was not instructed as to which of the fifty acts provided the basis for the charges against Woertman.

## II

Woertman contends that his conviction must be reversed because the bill of particulars failed to specify the dates and times that the alleged sexual assaults took place. He also asserts that the trial court erred in not ordering the prosecution to elect particular acts on which it relied for conviction on each count and in not instructing the jury regarding the specific acts that it had to unanimously agree on in order to convict. Because Woertman did not object to the jury instructions, we must determine whether there was plain error that requires reversal.[5]

## A

### Bill of Particulars

■ The purpose of a bill of particulars "is to enable the defendant to properly prepare his defense in a case where the indictment, although sufficient to advise the defendant of the charges against him, is nonetheless so indefinite in its statement of a particular charge that it does not afford the defendant a fair opportunity to procure witnesses and prepare for trial...." *Kogan v. People,* 756 P.2d 945, 952 (Colo.1988); *see also People v. District Court,* 198 Colo. 501, 503, 603 P.2d 127, 129 (1979). A bill of particulars also protects the defendant from being prosecuted twice for the same offense, and may be necessary in order for the defendant to have sufficient information to provide a notice of alibi defense. *United States v. Burgin,* 621 F.2d 1352, 1359 (5th Cir.1982); *see People v. Marquez,* 692 P.2d 1089, 1098 (Colo. 1984).

■ Woertman complains that the bill of particulars did not comply with *Kogan* because times were not specified. In *Kogan,* we said that when time is not a material element of the offense, "the precise time at which the crime is charged to have been committed is not material," and is therefore not required in a bill of particulars. *Kogan,* 756 P.2d at 953. A specific time

---

3. The prosecution originally offered the evidence of noncharged sexual contact as part of the *res gestae.* Later, the prosecution argued that the evidence was a unique combination of *res gestae* and similar transaction evidence. The prosecution later conceded that it was similar transaction evidence.

    *Res gestae* may be defined as,
    matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without a knowledge of which the main fact might not be properly understood. They are the events themselves speaking through the instinctive words and acts of the participants; the circumstances, facts and declarations which grow out of the main fact, are contemporaneous with it and serve to illustrate its character.

    *Martinez v. People,* 55 Colo. 51, 53–54, 132 P. 64, 65 (1913). The evidence here of over fifty acts

of sexual assault spanning a long time frame cannot be characterized as *res gestae.*

4. *Stull* requires that if the trial court admits evidence of similar transactions for the purpose of showing intent, motive, modus operandi, plan, or identity, it must instruct the jury at the time the evidence is admitted regarding the limited purpose for which the evidence is being received. The trial court must also instruct the jury in the general charge on the limited purpose for the admission of such evidence. *Stull v. People,* 140 Colo. at 286, 344 P.2d at 462 (1954).

5. Plain error occurs when, "after review of the entire record, [we] can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People,* 743 P.2d 415, 420 (Colo.1987).

may be required if it is necessary to enable the defendant to properly prepare his defense or protect against subsequent prosecution for the same offense. *Id.; see Marn v. People,* 175 Colo. 242, 247, 486 P.2d 424, 427 (1971); *see also State v. Hauck,* 172 Conn. 140, 374 A.2d 150 (1976); *State v. Armstrong,* 238 Kan. 559, 712 P.2d 1258 (1986); *Clinebell v. Commonwealth,* 3 Va.App. 362, 367–68, 349 S.E.2d 676, 679 (1986).

■ Woertman asserts that more specific dates were necessary to enable him to provide and give notice of an alibi. An alibi defense requires proof that the defendant was unavailable to commit the offense because he was not present at the place where the crime was committed. *People v. Marquez,* 692 P.2d at 1098. Since the sexual contact was alleged to have occurred during periods of time when Woertman admittedly had unsupervised access to R.T. on a regular basis, an alibi would not have been a viable defense.

In our view, although the times set forth in the bill of particulars covered fifty-five days, the time period coupled with the description of the acts enabled Woertman to properly prepare his defense and sufficiently advised him of the sexual assault charges against him. *Kogan,* 756 P.2d at 953.

## B

### Multiple Offenses

Woertman argues that reversal is required because the prosecution failed to elect a particular act upon which to predicate a conviction on each count. He also contends that reversal is required because the trial court did not instruct the jury at the time the testimony admitted that evidence was admitted as a similar transaction and for a limited purpose.

In *People v. Estorga,* 200 Colo. 78, 81, 612 P.2d 520, 523 (1980), we said that when there is evidence of many acts, any one of which would constitute the offense charged, the prosecution must "individualize and select a specific act upon which it relies for a conviction, although the prosecution need not identify the exact date of the offense." Such an election "enables the defendant to prepare and make his defense to a specific charge, and assures that some jurors do not convict on one offense and others on a separate offense." *Id.* (citing *Laycock v. People,* 66 Colo. 441, 182 P. 880 (1919)); *see Burlison v. State,* 501 S.W.2d 801 (Tenn.1973); *see also Shier v. People,* 116 Colo. 353, 181 P.2d 366 (1947); *Wills v. People,* 100 Colo. 127, 66 P.2d 329 (1937); *Schreiner v. People,* 95 Colo. 392, 36 P.2d 764 (1934).

■ The danger of different jurors convicting on acts not charged in the information is compounded when the court instructs the jury that they can find the defendant guilty if the evidence shows the crime occurred at any time within three years prior to the filing of the information.[6] *Estorga,* 200 Colo. at 81, 612 P.2d at 523. Such an instruction is only proper if the evidence proves only one act, but the date of the incident is in question. *Id.* at 81, 612 P.2d at 523. In the present case, the jury was given such an instruction even though evidence of many separate acts was admitted.

■ Here, the prosecution introduced evidence of over fifty incidents of sexual contact between Woertman and R.T. or C.B. to support the three counts. The prosecution, however, asserts that evidence of the other acts simply provided a context within which the sexual assault took place. *See People v. Barela,* 689 P.2d 689 (Colo.App.1984). We first applied *Estorga* and *Laycock* to evidence of repeated sexual abuse of young children in *Thomas v. People,* 803 P.2d 144 (Colo.1990). In *Thomas,* we said that the ultimate concern "is a fair procedure that accords protection to the due process rights of the defendant" while at the same time ensuring that "the difficulty in differentiat-

---

6. Three years was the applicable statute of limitations when *Estorga* was announced. Now, section 16–5–401, 8A C.R.S. (1986 & 1990 Supp.), extends the applicable statute of limita-tions for sexual assault on a child by seven years, making it possible to prosecute an offender up to ten years after the last sexual assault took place.

ing among various acts of sexual abuse in evidence" does not "preclude a conviction so long as there is no reasonable likelihood of jury disagreement regarding the defendant's commission of any of the acts." *Thomas*, at 153, 154 (citing *People v. Jones*, 51 Cal.3d 294, 321, 792 P.2d 643, 658, 270 Cal.Rptr. 611, 626 (1990)).

*Thomas* stated that when the trial court found there was no reasonable likelihood that the jurors would disagree on which acts the defendant committed, the prosecution was not required to "designate a particular instance." *Thomas*, at 153. When the prosecutor is not required to designate a particular instance, however, "the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged." *Id.* at 154.

In the case before us, the trial court erred by not requiring the prosecution to elect a specific act, or in the alternative, by not providing the jury with a unanimity instruction. The instruction for Count I simply explained that the jury, in order to convict, had to unanimously find that sometime between November 1, 1984, and December 25, 1984, Woertman subjected R.T. to "any sexual contact."[7] The jury was also instructed that "the exact date as alleged in the information need not be proved.... [I]t is sufficient that the evidence proved that the act charged was actually committed within three years prior to the date the information was filed."

The state introduced over fifty acts of alleged sexual abuse on a child, but did not specify what evidence went to the different charges against Woertman, and what evidence simply represented similar transactions by which the jury could place sexual assaults in context. The trial court did not instruct the jury on the specific acts relied on to prove the charges set forth in the information. The failure to provide an instruction, coupled with inadequate limiting instructions as required by *Stull* and the absence of a proper unanimity instruction set forth in *Thomas*, provided a margin for error that mandates reversal. Some of the jurors may have decided to convict on one act, while others may have decided to convict on another. Under these circumstances, although Woertman arguably had enough information to properly prepare his defense and ensure that he would not be tried twice for the same offense, it is impossible to be reasonably certain of the reliability of the judgment of conviction.

Accordingly, we reverse and return this case to the court of appeals with directions to remand to the district court for a new trial.

MULLARKEY, J., does not participate.

---

7. "Sexual contact" is further defined as:
   the knowingly touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or the knowingly touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse.
   "Intimate parts" means "the external genitalia or the perineum or the anus or the pubes of any person or the breast of a female person."